Freeman, J.,
delivered the opinion of the Court.
This bill presents two questions for decision. First, whether a party in possession of land, claiming to have a legal title thereto, or alleging one in his bill, may come into a Court of Chancery and enjoin a judgment creditor of the party from whom he holds his title, from proceeding to sell the land, by virtue of an execution against his vendor, and thus prevent a sale that may operate as a cloud on his title if the sale is perfected; or shall he be compelled to wail till the sale is completed, and rely on the strength of his legal title in a Court of Law.
The jurisdiction of this Court to set aside deeds and other legal instruments which are a cloud upon the title to real estate, and to order them to be • delivered up and cancelled, is now fully established. This jurisdiction will be exercised whether the char *719 acter of the deed, as being void or voidable, appears on its face or otherwise; and although the defendants are in possession, and complainants have the legal title, and might sue at law for the recovery of the land, the remedy at law not being esteemed adequate relief in such cases: See 3 Head, 41-42, and cases cited. And in the language of Chancellor Walworth, in case of Pettit v. Shepherd, 5 Paige’s Ch. R., 501: “ If a Court of Chancery would have jurisdiction to set aside the Sheriff’s deed which might be given on a sale, and to order the same to be delivered up and can-celled, as forming an improper cloud upon the complainant’s title to his land, it seems to follow as a neceseary consequence, that the Court may interpose its aid to prevent such a shade from being cast upon the title, when the defendant evinces a fixed determination to proceed with the sale.” The same doctrine is laid down by the Supreme Court of Ohio, in case of Norton v. Beaver et als., 5 Ohio R., 111, and we think the principle sound.
Why should the Court wait until the threatened cloud is completed, and a deed made, upon a sale at execution, before it interposes to protect a party? Why not prevent the mischief, as well as remove it after it is effected? We confess we can see no sound reason why it should not be done, but think the sound analogies of the doctrine of quia timet hills, as administered in a Court of Chancery, will abundantly support the jurisdiction. If a party can come into a Court of Equity and make good his own title, he ought to be permitted to ask the aid of that Court *720 to prevent a sale of his property, that may involve him in tedious litigation in a Court of Law, and perhaps then compel a resort to a Court of Equity in order to settle the rights of the parties. It can be no disadvantage to the . creditor to have his rights settled in this way; for if he sells, his execution is satisfied to the extent of amount the land shall sell for, and then, after years of litigation he finds the title fails, and is not profited by the proceeding, as he will probably be the only purchaser of land sold with an adverse claim on it.
"We, therefore, hold that the bill may well be filed in this case on the above principle.
The next question presented in the record arises out of the following state of facts. On the 16th day of November, 1860, Jno. W. Nabors sold the tract of land in controversy to one Susan B. Cox, a feme covert, resident in the State of Mississippi, for the sum of $5,000, and gave his bond to her for title when the purchase-money should be paid. This title bond was filed in Register’s office of Hardeman county, for registration, 3d of June, 1861, and duly recorded.
The bill alleges, that in February, 1862, complainants, Merriman & Smith, bought this land from said Susan B. Cox, for $4,500, and that she and her husband, Wm. Cox, assigned and transferred by endorsement the title bond of Nabors to complainants, requesting the said Nabors to execute a deed to them; that Nabors did, in March, 1862, make them a deed, they having paid the purchase-money due him; that said deed was duly executed and delivered to com *721 plainants, they at the same time surrendering to him the title bond executed to Mrs. Cox. This deed was neglected to be registered, and is alleged to have been lost during the war.
Upon representation of the fact of the loss of this deed to Nabors, he made another deed to the parties, in lieu of the lost one, on 20th October, 1869, and noted for registration November 9th, 1869, in the Register’s office*in Hardeman county.
In the meantime, however, at March Term, 1869, of Chancery Court at Bolivar, defendant, J. J. Polk, as administrator of Archie Pledge, obtained a decree against F. L. Pledge, the said Jno. W. Nabors and others, for about $3,200, on which an execution issued to Sheriff of Hardeman county, who, in October, 1869, before the registration of the lost deed, levied it on the land in controversy as the property of John W. Nabors, or at any rate as being subject to levy for the satisfaction of this decree and execution.
This bill is filed to enjoin the sale under this levy.
The parties allege they took possession of the land in 1862, under their purchase from Mrs. Cox, and have held undisturbed possession up to the time of filing the bill.
The demurrer to this part of the bill goes on the grounds that, by the assignment of the title bond to complainants, they were placed in the shoes of Mrs. Cox, and when they gave up the title bond, it ceased to be effective, and by acceptance of the deed in fee direct from Nabors, the parties stood as if they had purchased from Nabors originally, and as the deed *722 they got was unregistered, the land was subject to be levied on as the property of Nabors.
We can not assent to correctness of this view of the case. The registration of the title bond given by Nabors to Mrs. Cox was the completion of an effective contract as against the creditors of Nabors, so that from the time of such registration they had no right to levy an execution on the land for satisfaction of debts against him. The assignment of*" that title bond to Smith & Merriman was not required to be registered, but might be made either by written assignment or by delivery simply, if bona fide done, and on sufficient consideration: 1 Col., 193; 4 Sneed, 699.
The assignment of this title bond to Smith & Mer-riman, placed them in the shoes of their assignor, in whose hands the land could not have been levied on for her vendor’s debts, after registration of the bond. The fact that the parties did go on to complete the contract of sale, by taking a deed which was not registered, could not defeat their right to the protection of the registered contract under which they claimed. If so, in every case of a sale by title bond, a judgment creditor might stand by with his execution, and immediately on the execution and delivery of a deed in pui’suance of the title bond, and giving up of the bond by the vendee, levy his execution on the land, before the parties could take the deed to the Register’s office, or have it noted for registration. This would be to practically defeat the effectiveness of registration of the title bond, and make its registration of but little real value, as protection against executions.
*723 We do not think this was intended by the Legislature, or would be a fair exposition of the rights of parties under our registration laws.
The question presented in the argument, that the contract between Mrs. Cox — she being a feme covert— and Nabors was void, is not presented in the demurrer as a ground of objection to the bill, and we give no opinion on the question in present aspect of the case, as the question can well be raised in the answer, and then properly decided.
The result is, the decree of the Chancellor must be reversed, and the ease remanded for further proceedings, with leave to complainants to make additional parties if thought proper. Defendants pay the costs of this Court.